# EXHIBIT 1

2012-CI-06585

407TH JUDICIAL DISTRICT COURT

JESSICA GONZALEZ  VS MERSCORP INC ET AL

DATE FILED: 04/19/2012



| | | |
|---|---|---|
| JESSICA GONZALEZ, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| MERSCORP, INC.; MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | |
| SYSTEMS, INC., AS NOMINEE FOR | § | |
| LENDER AND LENDER'S | § | |
| SUCCESSORS AND ASSIGNS, a/k/a | § | |
| MERS;  FEDERAL HOME LOAN | § | JUDICIAL DISTRICT |
| MORTGAGE CORPORATION, d/b/a | § | |
| FREDDIE MAC; BANK OF AMERICA, | § | |
| N.A., AS SUCCESSOR BY MERGER TO | § | |
| BAC HOME LOANS SERVICING, LP., | § | |
| | § | |
| Defendants | § | |
| | § | BEXAR COUNTY, TEXAS |



## PLAINTIFF'S VERIFIED ORIGINAL PETITION FOR WRONGFUL FORECLOSURE AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Plaintiff, **JESSICA GONZALEZ** who files this Original Petition, in the interest of justice and fairness, and asks this Honorable Court to find in favor of Plaintiff and against Defendants, **MERSCORP, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LENDER AND LENDER'S SUCCESSORS AND ASSIGNS, a/k/a MERS;  FEDERAL HOME LOAN MORTGAGE CORPORATION, d/b/a FREDDIE MAC; BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO**

BAC HOME LOANS SERVICING, LP., regarding Plaintiff's claims of Wrongful Foreclosure and underlying violations of the Texas Debt Collection Act, Texas Business and Commerce Code, Texas Property Code, Texas Deceptive Trade Practices Act, and the Federal Government's Home Affordable Modification Program ("HAMP") as stated herein, and in support thereof show unto the Court the following:

<u>DISCOVERY CONTROL PLAN LEVEL</u>

1.      Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery in this case under Level 3.

<u>PARTIES AND SERVICE</u>

2.      Plaintiff JESSICA GONZALEZ is an individual whose mailing address is 12122 Jimmer Cove, San Antonio, TX 78221. The last three digits of her driver's license number are 164, and the last three digits of her social security number are 895.

3.      Defendant MERSCORP, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), as Nominee for Lender and Lender's Successors and Assigns is a Delaware Corporation and may be served through its registered agent: CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.   Service on this defendant may be affected by personal service or Certified Mail Return Receipt Requested.

4.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION, d/b/a FREDDIE MAC, ("Freddie Mac") has been named as a defendant in this action due to its failure to administer HAMP in accordance with Plaintiffs' Constitutional rights to procedural due process, authority to issue guidelines and rules related to the HAMP program in coordination with the Treasury Department as statutorily required, and as the entity required to hold mortgage loan servicers accountable for compliance with all HAMP guidelines. Defendant Freddie Mac is

located at 8200 Jones Branch Drive, McLean, VA 22102. Service on this defendant may be affected by personal service or Certified Mail Return Receipt Requested.

5.    Defendant BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGERTO BAC HOME LOANS SERVICING, LP. is a foreign for-profit Corporation and may be served at its offices located at 400 National Way, Mailstop CA6-919-02-22, Simi Valley, CA 93065. Service on this defendant may be affected by personal service or Certified Mail Return Receipt Requested.

<u>**JURISDICTION AND VENUE**</u>

6.    The subject matter in controversy is within the jurisdictional limits of this Court.

7.    This Court has personal jurisdiction because the property which is the subject of this litigation is located in Texas and Defendants are doing business within this state.

8.    Venue in this cause is proper in Tarrant County, Texas pursuant to Section 17.56 of the Texas Business and Commerce Code and under Section 15.001 of the Texas Civil Practice and Remedies Code because this action involves real property, and the property is located in Bexar County, Texas.

<u>**FACTS**</u>

9.    Plaintiff is the record owner of the property located at 12122 Jimmer Cove, San Antonio, Texas 78221, more specifically described in *Exhibit "A"* attached hereto and incorporated herein for all purposes.

10.    Plaintiff and her ex-husband allegedly signed a Promissory Note for $136,108 in order to purchase the property located at 12122 Jimmer Cove, San Antonio, Texas 78221 on October 3, 2005. Plaintiff allegedly signed a Deed of Trust on October 3, 2005, which was allegedly

recorded in the office of the County Clerk of the Deed of Trust Records of Bexar County, Texas. These documents are attached hereto as *Exhibit "B"* and incorporated as if fully stated herein.

11.     On December 28, 2011, attorneys for Defendant sent Plaintiff Notice of Acceleration and Notice of Substitute Trustee's Sale, stating that a foreclosure sale was scheduled for February 7, 2012 in Bexar County, Texas. That sale occurred as scheduled, whereupon Defendants purchased the subject property at said Substitute Trustee's Non-Judicial Sale.

12.     At no time prior to the foreclosure sale of the subject property has Defendants produced any certified copies of any and/or all transfer documents showing all of the transfers and assignments of the Original Deed of Trust and the Original Note. Additionally, Defendants have never produce the wet-ink Original Note <u>and all evidence of all purported negotiations of said wet-ink note to Plaintiff</u>. This evidence of purported transfers and assignments is essential in order to verify that Defendants are in fact the "Holder in Due Course" of the actual note as required by Texas Law. Defendants have yet to ever produce such documents. On information and belief, Plaintiff alleges that Defendants are not the actual Holder of the wet-ink Original Note, are not the duly appointed representative(s) for the current actual Holder of the wet-ink Original Note, and therefore did not have authority to foreclose on the property and were not entitled to collect on the alleged debt.

<u>**WRONGFUL FORECLOSURE**</u>

13.     Plaintiff re-alleges and incorporates by reference the foregoing allegations.

14.     A foreclosure action is merely a collection action on a negotiable instrument, namely the wet-ink Original Promissory Note. A Deed of Trust acts as a security instrument for the wet-ink Original Promissory Note. A foreclosure action is a collection on the wet-ink Original

Promissory Note, not on the Deed of Trust. The Texas Business and Commerce Code states specifically that only a "Holder" of an instrument is entitled to enforce the instrument.

15.    No documents relating to the foreclosure, which occurred on or about February 7, 2012, refer to any Defendant as the "Holder" of the wet-ink Note, but Defendants have claimed to show themselves as said "Holder" or "Holder in Due Course".

16.    Defendants' knew or should have known they did not have legal right to foreclose; regardless, Defendants pursued the foreclosure sale of the subject property.

17.    To date, Defendants have failed to produce, and cannot produce, the wet-ink Original Note with all allonges, transfers, and assignments affixed thereto permanently and irremovably, as required by the Texas Business and Commerce Code. Therefore, they have not demonstrated the identity of the true and legal "Holder" of the wet-ink Original Note. Upon information and belief, said wet-ink Original Note was part of a mortgage backed security when the Substitute Trustee's Sale occurred, and the steps required by the Texas Business and Commerce Code to effect proper transfer of said Note to Defendants were not completed. At most, Defendants possessed a mere photocopy or electronic copy of said Note document that was and is utterly devoid of proper legal negotiation, proper chain of title, and authority to support collection of the debt.

18.    All Defendants have purposefully, intentionally, and wrongfully instructed and carried out a collection action by way of the foreclosure and Substitute Trustee's Non-Judicial Foreclosure Sale in violation of the Texas Finance Code sections 392.301(8) and 392.304.

## TEXAS BUSINESS & COMMERCE CODE

19.    Plaintiff re-alleges and incorporates by reference the foregoing allegations.

20.    A foreclosure action is merely a collection action on a negotiable instrument, namely the wet-ink Original Promissory Note. A Deed of Trust acts as a security instrument for the wet-ink Original Promissory Note. A foreclosure action is a collection on the wet-ink Original Promissory Note, not on the Deed of Trust. The Texas Business and Commerce Code states that only a "Holder" of an instrument is entitled to enforce the instrument.

21.    Defendants have failed to sufficiently produce the wet-ink Original Note with all allonges, transfers, and assignments affixed thereto permanently and irremovably as required by the Texas Business and Commerce Code. Therefore, they have not shown that they are the "Holder" of the Note, and have not shown authority to collect on the Note, foreclose on the Property, or conduct the Substitute Trustee's Non-Judicial Sale.

## TEXAS FINANCE CODE

22.    Plaintiff re-alleges and incorporates by reference the foregoing allegations.

23.    Plaintiff would show that because Defendants have provided no evidence that they are in fact the legal Holder of the wet-ink Original Note, they were not authorized to undertake collection, foreclosure, or Substitute Trustee's Non-Judicial Sale. As such, Defendants have violated Chapter 392 of the Texas Finance Code because Defendants engaged in certain fraudulent, deceptive, and/or misleading representations actionable under the Texas Finance Code §392.304. Defendants have purposefully attempted to collect on a Note of which Defendants are not the legal Holders in fact.

24.    Defendants have purposefully, intentionally, and wrongfully carried out a collection action by way of foreclosure and Substitute Trustee's Non-Judicial Sale, in violation of Texas Finance Code Sections 392.301(8) and 392.304.

25.    All alleged transfers, assignments, and misstatements of facts regarding the wet-ink Original Note, and the failure to present the wet-ink Original Note, constitute violations of the Texas Finance Code.

## DECEPTIVE TRADE PRACTICES ACT

26.    Plaintiff re-alleges and incorporates by reference the foregoing allegations.

27.    Plaintiff would further show that Defendants engaged in certain false, misleading, and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below.

28.    Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, and violated the Texas Finance Code by alleging transfers and assignments of the wet-ink Original Note, which are misstatements of fact, and failing to produce any documents showing that they are in fact the "Holders" of said wet-ink Note.

29.    DTPA Violations under Other Statutes. Plaintiff would show that Defendants engaged in false, misleading, or deceptive acts as provided by the "tie-in" statute, namely the Texas Debt Collection Act (Texas Finance Code, Sections 392.301(8), 392.303, 392.304).

30.    Producing Cause. Plaintiff would show that the acts, practices, and/or omissions complained of were the producing causes of Plaintiff's damages more fully described herein.

31.    Written Notice Not Given. Plaintiff has not timely notified Defendants of such complaint pursuant to Section 17.505(a) of the Texas Business and Commerce Code. However, pursuant to Section 17.505(b) of the Texas Business and Commerce Code, the giving of 60 days' written notice is impracticable by reason of the necessity of filing suit in order to prevent further

irreparable damage to Plaintiff, and because a consumer's claim is asserted as a response to actions taken by Defendants.

## "HAMP" PROCEDURAL DUE PROCESS VIOLATION

32.     HAMP is part of a $75 billion government program to prevent foreclosures. Both the enabling legislation and the federal government's own implementing guidelines make it clear that eligible and qualified homeowners "shall" receive a loan modification, thus creating legal entitlements for Texas homeowners facing foreclosure. Yet, the government has denied Plaintiff the most fundamental due process protections: notice of the basis for a decision and an opportunity to appeal.   In this case, Plaintiff's constitutional rights to procedural due process have been violated.

33.     Plaintiff was eligible for federal government's Home Affordable Modification Program ("HAMP"), but access was denied, despite satisfying all eligibility criteria.

34.     Plaintiff requested a modification and applied for the HAMP program, and then, without being given any reason or an opportunity to appeal, her application was denied and her house was sold at Foreclosure Sale. These documents are attached hereto as *Exhibit "C"* and incorporated as if fully stated herein.

35.     Plaintiff meets all of the eligibility requirements for a loan modification through HAMP. Eligibility for HAMP is determined by five general criteria. First, the home must be the applicants' primary residence.  Second, the amount owed on the first mortgage must be equal to or less than $729,750.  Third, a homeowner must be "having trouble" paying their mortgage. This means that the homeowner is delinquent (missed two payments) or default is "imminent" due to the nature of the homeowner's hardship and assets.  Fourth, the mortgage was originated before January 1, 2009.  Fifth, the payment is more than 31% of the homeowner's gross monthly

income. However, despite satisfying these eligibility criteria, Plaintiff's access to HAMP was denied.

36.    HAMP does not require that homeowners are given any notice of a denial at all, and for homeowners where the notices that are given do not provide any specific reason for the denial. HAMP is complex, and the lack of transparency prevents Plaintiff from correcting errors or misinformation. The lack of opportunity to appeal makes it even more difficult to access the benefits. Now that Plaintiff's house has been sold, there is also no formal and uniform method to undo the wrongful foreclosure.

37.    Defendant "Freddie Mac" has been named as a defendant in this action due to its failure to administer HAMP in accordance with Plaintiffs' Constitutional rights to procedural due process, authority to issue guidelines and rules related to the HAMP program in coordination with the Treasury Department as statutorily required, and as the entity required to hold mortgage loan servicers accountable for compliance with all HAMP guidelines.

38.    Defendant BANK OF AMERICA, N.A. is one of the mortgage loan servicers who agreed to provide loan modifications through and administer HAMP on behalf of the government, as well as abide by all of the government's program requirements; yet without just cause or excuse failed miserably and denied Plaintiff the modification.

39.    The government requires that if a homeowner is denied a HAMP modification, that all other loan modification or loss mitigation programs must be considered for the homeowner *prior* to initiating foreclosure proceedings.

40.    No such evaluation was awarded Plaintiff when she was denied the HAMP modification.

41,    Homeowners who meet the government's criteria and standards for the program are entitled to a loan modification pursuant to the terms of HAMP. A mortgage loan servicer

implementing HAMP does not have discretion to deny a homeowner access to the HAMP program, if the homeowner satisfies the government's criteria for the program. Plaintiff satisfied the government's criteria for the program.

42.   Defendant Freddie Mac is responsible for compliance, meaning auditing mortgage loan servicers for compliance with program rules and protocols.

43.   All Defendants have voluntarily agreed to administer HAMP and participate in the program. In signing a contract with the Treasury Department, Defendants agreed to be bound by HAMP requirements and must abide by the framework and protocols for administering the benefits of HAMP.   Defendant's clearly violated this protocol and their responsibility to Plaintiff.

44.   The Fifth Amendment to the United State Constitution commands the federal government: "No person shall...be deprived of life, liberty, or property, without due process of law...."   HAMP is an entitlement program such that its benefits cannot be administered arbitrarily and without procedural due process. Procedural due process requires meaningful notice of a specific reason why a person has been denied. Procedural due process further requires an opportunity to correct mistakes or appeal an adverse decision as well as notice of such an opportunity. Procedural due process further requires an opportunity to appeal. These due processes were denied Plaintiff.

45.   If Plaintiff is forced out of her home, the eviction will cause her serious and irreparable harm.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

46.   Plaintiff requests this Honorable Court to restrain Defendants, or any of them, Defendants' officers, agents, servants, employees, and assigns, constables, sheriffs, Justices of

the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the subject property during the pendency of this cause. Unless this Honorable Court immediately restrains Defendants, or any of them, Defendants' officers, agents, servants, employees, and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting or listing the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the subject property during the pendency of this cause, Plaintiff will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiff complete and final relief. More specifically, Plaintiff will show unto this Court the following:

(a)     The harm to Plaintiff is imminent because her property is at immediate risk of re-sale, alteration, or destruction whereupon Plaintiff would lose the ability to recover her property should she prevail in this action.

(b)     There is no adequate remedy at law that will give Plaintiff complete and final relief if the Temporary Restraining Order is not granted, and any transfer, alteration, or destruction of the property is allowed to occur.

(c)     Plaintiff is willing to post a reasonable temporary restraining order bond and hereby request this Honorable Court to set such bond at a reasonable amount.

(d)     Plaintiff has met her burden by establishing each element that must be present before injunctive relief can be granted by this Court, and Plaintiff therefore is entitled to the requested temporary restraining order.

47.   Plaintiff is likely to succeed on the merits of this lawsuit.

## REQUEST FOR DISCLOSURE

48.   Plaintiff requests that Defendants disclosure within 30 days of service of this request the information or material described in Rule 194.2 of the Texas Rules of Civil Procedure.

## JURY DEMAND

49.   Plaintiff requests trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** premises considered, Plaintiff requests that Defendants be cited to appear and answer herein and, upon trial of this matter, Plaintiff be awarded damages as set forth below against these Defendants jointly and severally.

## PLAINTIFF RESPECTFULLY REQUESTS:

1.  That this Petition be filed and that a day be appointed for a hearing on this matter;

2.  That a temporary restraining order will issue, restraining Defendants, or any of them, Defendants' officers, agents, servants, employees, and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting or listing the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the subject property during the pendency of this cause;

3.  That the Court sets a reasonable bond for the temporary restraining order;

4.  That, after notice and hearing, the Court set aside the Substitute Trustee's Sale of the above-specified property and issue a temporary injunction enjoining and restraining Defendants, or any of them, Defendants' officers, agents, servants, employees, successors and assigns,

constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting the subject property for any other sale, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the subject property during the pendency of this cause;

5. That, after trial on the merits, the Court permanently enjoin Defendants, or any of them, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property of the subject property, reporting the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the property;

6. Damages in an amount not to exceed the jurisdictional limits of this Court;

7. Economic Damages;

8. Punitive Damages;

9. Additional Treble Damages for all intentional and knowing violations;

10. Exemplary Damages;

11. Equitable Relief;

12. Costs of Court; and

13. All other relief to which Plaintiff is entitled;

14. Plaintiff prays for general relief.

Respectfully submitted,

Justin Barringer
Bar #24069344
7857 Fox Horn Dr.
Irving, TX 75063
Attorney for Plaintiff

## VERIFICATION

STATE OF TEXAS            §
                          §
COUNTY OF BEXAR           §

BEFORE ME, on this day personally appeared Jessica Gonzalez, Petitioner herein, who after being by me duly sworn, testified that she has personal knowledge of the facts contained in PLAINTIFF'S "VERIFIED' ORIGINAL PETITION FOR WRONGFUL FORECLOSURE AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURE, and that said facts are true and correct according to her knowledge and belief and based on personal knowledge as witnessed and experienced under the circumstances as they occurred.

FURTHER AFFIANT SAYETH NOT

SIGNED THIS 19 day of April , 2012

Jessica Gonzalez

SWORN TO AND SUBSCRIBED BEFORE ME on this the 19 day of April , 2012, to certify which witness my hand and seal of office.

K. GARCIA
Notary Public, State of Texas
My Commission Expires
June 16, 2013

Notary Public in and for the State of Texas

PLAINTIFF'S ORIGINAL PETITION FOR WRONGFUL FORECLOSURE

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on the following counsel and/or pro se parties of record, in accordance with Texas Rules of Civil Procedure 21 and 21a, on the date shown.

**DEFENDANTS:**

MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LENDER AND LENDER'S SUCCESSORS AND ASSIGNS, a/k/a MERS; FEDERAL HOME LOAN MORTGAGE CORPORATION, d/b/a FREDDIE MAC; BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP..

Justin Barringer
Bar #24069344
7857 Fox Horn Dr.
Irving, TX 75063
Attorney for Plaintiff

## EXHIBIT A

PROPERTY DESCRIPTION

## EXHIBIT B

PROMISORRY NOTE

## EXHIBIT C

HAMP DOCUMENTS

10/28/2014 12:57 FAX                                                      ☒0002/0009

Texas Residential Owner Policy of Title Insurance · One-to-Four Family Residence (1-1-93)

# STEWART TITLE
## GUARANTY COMPANY

### OWNER'S COVERAGE STATEMENT

This Policy insures your title to the land described in Schedule A – if that land is a one-to-four family residential property or condominium unit.

Your insurance, as described in this Coverage Statement, is effective on the Policy Date shown in Schedule A.

This document is title insurance. It is not an opinion or report of your title. It is a contract of indemnity, meaning a promise to pay you or take other action if you have a loss resulting from a covered title risk.

Your insurance under this contract is limited by the following:

- Exclusions on page 2.
- Exceptions in Schedule B, page 4.
- Conditions on pages 2 and 5

We insure you against actual loss resulting from:

- Any title risks covered by this Policy -- up to the Policy Amount, and
- Any costs, attorneys' fees and expenses we have to pay under this Policy. We must approve the attorney before the attorney begins to work. You have the right to disapprove our choice of attorney for reasonable cause.

### COVERED TITLE RISKS

This Policy covers the following title risks subject to the Exceptions (p. 4) and Exclusions (p. 2), if they affect your title to the land on the Policy Date. We do not promise that there are no covered risks. We do insure you if there are covered title risks.

1. Someone else owns an interest in your title.
2. A document is invalid because of improper signature, acknowledgment, delivery, or recording.
3. A document is invalid because of forgery, fraud, duress, incompetency, incapacity or impersonation.
4. Restrictive covenants apply to your title
5. There is a lien on your title because of:
   - a mortgage or deed of trust,
   - a judgment, tax, or special assessment, or
   - a charge by a homeowner's or condominium association.
6. There are liens on your title for labor and material which have their inception before the policy date. However, we will not cover liens for labor and material that you agreed to pay for.
7. Others have rights in your title arising out of leases, contracts or options.
8. Someone else has an easement on your land.
9. You do not have good and indefeasible title.
10. There are other defects in your title.
11. There are other liens or encumbrances on your title.

This Policy also covers the following title risk:

You do not have any legal right of access to and from the land.

### OUR DUTY TO DEFEND AGAINST COURT CASES

We will defend your title in the part or parts of a court case involving a Title Risk covered by this Policy. We will pay the costs, attorneys' fees, and expenses that we incur in that defense. We will not pay for the parts of a case not involving a covered title risk. You may disapprove our choice of attorney for reasonable cause.

We can end this duty to defend your title by exercising any of our options listed in item 4 of the Conditions, see page 5.

This Policy is not complete without Schedules A and B.

Signed under seal for the company, but this Policy is to be valid only when it bears an authorized countersignature.

_____
Chairman of the Board

stewart
title guaranty company

_____
President

Countersigned:

_____
Authorized Countersignature
Stewart Title of San Antonio
San Antonio, Texas

T-1R (Rev. 1-1-93)

| Page 1 of Policy Serial No. | O-5890-310998 |

10/28/2014 12:58 FAX                                                    @0003/0008

FT-(12/2000)

T-1R Form Prescribed by Texas Department of Insurance (Revised 1/1/93)

## Stewart Title Guaranty Company

## TEXAS RESIDENTIAL OWNER POLICY OF TITLE INSURUANCE
## ONE-TO FOUR FAMILY RESIDENCES

### SCHEDULE A

Policy Number:  O 5890 310998                    File Number:  10945

Policy Date:  October 10, 2005

Policy Amount:  $136,108.00

Premium:  $1,123.50

1.  Name of Insured:

    Paul O. Silva and  Jessica G. Silva

2.  We insure your interest in the land covered by this Policy is:

    Fee Simple

3.  Legal Description of land:

    Lot Sixty-Three (63), Block Five (5), New City Block 11166, MISSION DEL LAGO, SUBDIVISION, UNITS 5 AND 6, PLANNED UNIT DEVELOPMENT, City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 9564, Page 203, Deed and Plat Records of Bexar County, Texas.

MIN# 4484

# NOTE

October 3, 2005                SAN ANTONIO                    TEXAS
[Date]                            [City]                            [State]

12122 JIMMER COVE, SAN ANTONIO, TX  78221

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $136,108.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Loan Partners Mortgage, Ltd., a Texas Limited Partnership.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **December 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **November 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **13100 Northwest Freeway, Suite 200, Houston, TX  77040** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 838.05

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

███████ 6679

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N (0207).01          Form 3200 1/01
VMP MORTGAGE FORMS · (800)521-7291
Page 1 of 3          Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

6679

-6N (0207).01

Page 2 of 3

Form 3200 1/01
Initials:

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PAUL O. SILVA                    -Borrower

_____ (Seal)
JESSICA G. SILVA                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[Sign Original Only]

 6679

Return To:

Home123 Corporation
13100 Northwest Freeway, Suite 200
Houston, TX 77040


Prepared By:

Home123 Corporation
13100 Northwest Freeway, Suite 200
Houston, TX 77040


———————————————[Space Above This Line For Recording Data]—————————————

Loan No.: ▓▓▓6679 ,

# DEED OF TRUST

MIN ▓▓▓▓▓4484

## NOTICE OF CONFIDENTIALITY RIGHTS:

If you are a natural person, you may remove or strike any or all of the
following information from this instrument before it is filed for record in the
public records: your social security number or your driver's license number.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 3, 2005
together with all Riders to this document.
(B)"Borrower" is   PAUL O. SILVA and JESSICA G. SILVA, Husband and Wife .




Borrower is the grantor under this Security Instrument.
(C) "Lender" is Loan Partners Mortgage, Ltd., a Texas Limited Partnership.

Lender is a Limited Partnership
organized and existing under the laws of Texas

▓▓▓6679

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3044  1/01

-6A(TX) (0307)
Page 1 of 16                    Initials:
VMP Mortgage Solutions (800)521-7291

Lender's address is 13100 Northwest Freeway, Suite 200, Houston, TX 77040

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is Eldon J. Youngblood

2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204 . Trustee's address is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated October 3, 2005
The Note states that Borrower owes Lender One Hundred Thirty-six Thousand One Hundred Eight And 00/100
Dollars
(U.S. $136,108.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2035
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
- [ ] Balloon Rider    [X] Planned Unit Development Rider    [ ] 1-4 Family Rider
- [ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]:

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

6679

-6A(TX) (0307)          Page 2 of 16          Initials: [signature]          Form 3044  1/01

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of BEXAR :

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

LOT SIXTY-THREE (63), BLOCK FIVE (5), NEW CITY BLOCK 11166, MISSION DEL LAGO, SUBDIVISION, UNITS 5 AND 6, PLANNED UNIT DEVELOPMENT, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 9564, PAGE 203, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS

Parcel ID Number: N/A
12122 JIMMER COVE
SAN ANTONIO
("Property Address"):

which currently has the address of
[Street]
[City], Texas  78221
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

██████6679

-6A(TX) (0307)                    Page 3 of 16                    Initials: ████        Form 3044  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument. .

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

6679

-6A(TX) (0307)          Page 4 of 10          Initial: ___          Form 3044   1/01

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

███████ 6679

VMP ®-6A(TX) (0307)

Page 7 of 15

Initials: PS JMD

Form 3044  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

6679

-6A(TX) (0307)    Page 9 of 16    Initials: 2.5c    Form 3044  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

6679

-6A(TX) (0307)                    Page 10 of 16                    Initials: [signature]    Form 3044    1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

6679

-6A(TX) (0307)                    Page 12 of 16                    Initials: [signature]    Form 3044  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

■■■■■6679

-6A(TX) (0307)    Page 13 of 16    Initials: ___    Form 3044   1/01

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

[X] Purchase Money.
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] Owelty of Partition.
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] Renewal and Extension of Liens Against Homestead Property.
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] Acknowledgment of Cash Advanced Against Non-Homestead Property.
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

▬▬▬6679

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                   _____ (Seal)
                                            PAUL O. SILVA               -Borrower

_____                   _____ (Seal)
                                            JESSICA G. SILVA            -Borrower

_____ (Seal)            _____ (Seal)
                  -Borrower                                             -Borrower

_____ (Seal)            _____ (Seal)
                  -Borrower                                             -Borrower

_____ (Seal)            _____ (Seal)
                  -Borrower                                             -Borrower

6679

-6A(TX) (0307)                 Page 16 of 16               Form 3044   1/01

10/28/2014 13:14 FAX                            ☑0022/0025

DATE:        October 3, 2005
BORROWER:   PAUL O. SILVA & JESSICA G. SILVA

CASE #:
LOAN #:      ███████6679
PROPERTY ADDRESS: 12122 JIMMER COVE, SAN ANTONIO, TX 78221

### DISCLOSURE STATEMENT ABOUT MERS

Mortgage Electronic Registration Systems, Inc. (MERS) is named on your mortgage as the mortgagee in a nominee capacity for <u>Loan Partners Mortgage, Ltd.</u> (Lender). MERS is a company separate from your lender that operates an electronic tracking system for mortgage rights. MERS is not your lender; it is a company that provides an alternative means of registering the mortgage lien in the public records. MERS maintains a database of all the loans registered with it, including the name of the lender on each loan. Your lender has elected to name MERS as the mortgagee in a nominee capacity and record the mortgage in the public land records to protect its lien against your property.

Naming MERS as the mortgagee and registering the mortgage on the MERS electronic tracking system does not affect your obligation to your Lender, under the Promissory Note.


_____
PAUL O. SILVA

_____
JESSICA G. SILVA

**Making Home Affordable Program**
**Request for Mortgage Assistance (RMA)**

MAKING HOME AFFORDABLE.gov

| REQUEST FOR MORTGAGE ASSISTANCE (RMA)  page 1 | COMPLETE ALL FOUR PAGES OF THIS FORM |
|---|---|

▶ Loan I.D. Number ▮▮▮▮▮ 9609     ▶ Servicer *BANK OF America*

| BORROWER | CO-BORROWER |
|---|---|

**Borrower's name** *Jessica Gonzalez*

**Social Security Number** ▮▮▮▮ 4895

**Home phone number with area code** ▮▮▮ 0361

**Cell or work number with area code**

**Co-borrower's name**

**Social Security Number**

**Home phone number with area code**

**Cell or work number with area code**

*I want to:* ☑ Keep the Property    ☐ Sell the Property
*The property is my:* ☑ Primary Residence    ☐ Second Home    ☐ Investment Property
*The property is:* ☑ Owner Occupied    ☐ Renter Occupied for Less than 12 Months    ☐ Vacant for Less than 12 Months

**Mailing address** *12122 Jimmer Cove San Antonio, TX. 78221*
Property address (if same as mailing address, just write same)     E-mail address

*Is the property listed for sale?* ☐ Yes ☑ No
*Have you received an offer on the property?* ☐ Yes ☑ No
Date of offer _____ Amount of offer $ _____
Agent's Name: _____
Agent's Phone Number: _____
For Sale by Owner? ☐ Yes ☐ No

*Who pays the real estate tax bill on your property?*
☐ I do ☑ Lender does ☐ Paid by condo or HOA
*Are the taxes current?* ☑ Yes ☐ No
Condominium or HOA Fees ☐ Yes ☐ No $ _____
Paid to: _____

*Have you contacted a credit-counseling agency for help* ☐ Yes ☐ No
*If yes, please complete the following:*
Counselor's Name: _____
Agency Name: _____
Counselor's Phone Number: _____
Counselor's E-mail: _____

*Who pays the hazard insurance premium for your property?*
☐ I do ☐ Lender does ☐ Paid by Condo or HOA
*Is the policy current?* ☐ Yes ☐ No
Name of Insurance Co.: _____
Insurance Co. Tel #: _____

*Have you filed for bankruptcy?* ☐ Yes ☑ No   *If yes:* ☐ Chapter 7   ☐ Chapter 13   Filing Date: _____
*Has your bankruptcy been discharged?* ☐ Yes ☐ No    Bankruptcy case number _____

*Additional Liens/Mortgages or Judgments on this property:*

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

| HARDSHIP AFFIDAVIT |
|---|

**I (We) am/are requesting review under the Making Home Affordable Program.**
**I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):**

☑ My household income has been reduced. For example: reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower.

☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt.

☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes.

☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time.

☐ I am unemployed and (a) I am receiving/will receive unemployment benefits or (b) my unemployment benefits ended less than 6 months ago.

☐ Other:

Explanation (continue on a separate sheet of paper if necessary): *See Attached Form*

**REQUEST FOR MORTGAGE ASSISTANCE (RMA), page 2**    ~~7601~~    **COMPLETE ALL FOUR PAGES OF THIS FORM**

## INCOME/EXPENSES FOR HOUSEHOLD[1]

Number of People in Household:

| Monthly Household Income | | Monthly Household Expenses/Debt | | Household Assets | |
|---|---|---|---|---|---|
| Monthly Gross Wages | $ 4428.00 | First Mortgage Payment | $ 1200 | Checking Account(s) | $ |
| Overtime | $ | Second Mortgage Payment | $ | Checking Account(s) | $ |
| Child Support/Alimony/Separation[2] | | Insurance (health, life, auto) | $ 142.00 | Savings/Money Market | $ |
| Social Security/SSDI | | Property Taxes | $ | CDs | $ |
| Other monthly income from pensions, annuities or retirement plans | $ | Credit Cards/Installment Loan(s) (total minimum payment per month) | $ | Stocks/Bonds | $ |
| Tips, commissions, bonus and self-employed income | $ | ~~Alimony, child support~~ payments Electric, Water | $ 226.00 | Other Cash on Hand | $ |
| Rents Received | $ | Net Rental Expenses | $ | Other Real Estate (estimated value) | $ |
| Unemployment Income | $ | HOA/Condo Fees/Property Maintenance | $ | Other _____ | $ |
| Food Stamps/Welfare | $ | Car Payments | $ 377.00 | Other _____ | $ |
| Other (investment income, royalties, interest, dividends etc.) | $ | Other Groceries, Cable, gasoline, Cell, maintenance | $ 681.00 | Do not include the value of life insurance or retirement plans when calculating assets (401k, pension funds, annuities, IRAs, Keogh plans, etc.) | |
| Total (Gross Income) | $ 4428.00 | Total Debt/Expenses | $ 2626.00 | Total Assets | $ 1000.00 |

## INCOME MUST BE DOCUMENTED

[1]Include combined income and expenses from the borrower and co-borrower (if any). If you include income and expenses from a household member who is not a borrower, please specify using the back of this form if necessary.
[2]You are not required to disclose Child Support, Alimony or Separation Maintenance Income, unless you choose to have it considered by your servicer.

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. If you do not wish to furnish the information, please check the box below.

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| | ☐ I do not wish to furnish this information | | ☐ I do not wish to furnish this information |
| Ethnicity: | ☑ Hispanic or Latino<br>☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White | Race: | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White |
| Sex: | ☑ Female<br>☐ Male | Sex: | ☐ Female<br>☐ Male |

| To be completed by interviewer | | Name/Address of Interviewer's Employer |
|---|---|---|
| This request was taken by:<br>☐ Face-to-face Interview<br>☐ Mail<br>☐ Telephone<br>☐ Internet | Interviewer's Name (print or type) & ID Number | |
| | Interviewer's Signature                Date | |
| | Interviewer's Phone Number (include area code) | |

*7607*

**REQUEST FOR MORTGAGE ASSISTANCE (RMA)   page 3**          **COMPLETE ALL FOUR PAGES OF THIS FORM**

## DODD-FRANK CERTIFICATION

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 et seq.), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:

    (a) felony larceny, theft, fraud, or forgery,
    (b) money laundering or
    (c) tax evasion.

I/we understand that the servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This certification is effective on the earlier of the date listed below or the date received by your servicer.

## ACKNOWLEDGEMENT AND AGREEMENT

*In making this request for consideration under the Making Home Affordable Program, I certify under penalty of perjury:*

1.  That all of the information in this document is truthful and the event(s) identified on page 1 is/are the reason that I need to request a modification or forbearance of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

2.  I understand that the Servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements, and may require me to provide supporting documentation. I also understand that knowingly submitting false information may violate Federal law.

3.  I understand the Servicer will pull a current credit report on all borrowers obligated on the Note.

4.  I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any Agreement under Making Home Affordable and may pursue foreclosure on my home.

5.  That I have not received a condemnation notice, there has been no change in the ownership of the Property since I signed the documents for the mortgage that I want to modify, and:

    (a)  for consideration for the Home Affordable Modification Program (HAMP) or unemployment assistance, my property is owner-occupied and I intend to reside in this property for the next twelve months, or

    (b)  for consideration for the Home Affordable Foreclosure Alternatives Program (HAFA), my property has been owner-occupied within the last twelve months.

6.  I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

7.  I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or forbearance or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

8.  I am willing to commit to credit counseling if it is determined that my financial hardship is related to excessive debt.

9.  I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, Social Security Number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of any Making Home Affordable Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services in conjunction with Making Home Affordable; and (e) any HUD-certified housing counselor.

The undersigned certifies/y under penalty of perjury that all statements in this document are true and correct..

| | | | |
|---|---|---|---|
| _Borrower Signature_ | ████ 4895 _Social Security Number_ | _Date of Birth_ | 1/24/12 _Date_ |
| _Co-borrower Signature_ | _Social Security Number_ | _Date of Birth_ | _Date_ |

7607

**REQUEST FOR MORTGAGE ASSISTANCE (RMA)  page 4**          **COMPLETE ALL FOUR PAGES OF THIS FORM**

## HOMEOWNER'S HOTLINE

*If you have questions about this document or the Making Home Affordable Program, please call your servicer.*

*If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.*



## NOTICE TO BORROWERS

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to Lender in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free), 202-622-4559 (fax), or www.sigtarp.gov and provide them with your name, our name as your servicer, your property address, loan number and reason for escalation. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.

9609

 

# Dodd-Frank Certification

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 *et seq.*), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:

   (a) felony larceny, theft, fraud, or forgery,
   (b) money laundering or
   (c) tax evasion.

I/we understand that the servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This Certificate is effective on the earlier of the date listed below or the date received by your servicer.

_____        1/24/12
Borrower Signature                          Date

_____        _____
Co-Borrower Signature                       Date

10/14/2014 08:23 FAX                                                    @0001/0001

Attention: To whom it may concern

Barrett Daffin Frappier
Turner & Engel, LLP

Subject: Loan# ████9609

Jessica Gonzalez
12122 Jimmer Cove
San Antonio, TX 78221

This is a "qualified written request" under Section 6 of the Real Estate Settlement
Procedures Act (RESPA).

I am writing because:

- I am aware of the procedure involved with Securitization and I'm also aware
  that my loan has been securitized, meaning that the servicer, or the QSPE if
  you will, does not have the right to foreclose on me since the note no longer
  exists and the trust is not allowed to hold assets.
- I am also aware of the robo-signing issue and I'm not convinced you can even
  provide the un-forged paperwork necessary to prove true ownership of the
  loan.
- I am requesting immediate halting of my foreclosure and a mediation to
  discuss the terms of a settlement.  If you move forward with the unlawful
  foreclosure I will be forced to take legal action, demand a recession and sue
  for damages.

I understand that under Section 6 of RESPA you are required to acknowledge my
request within 20 business days and must try to resolve the issue within 60 business
days.

Sincerely,

Jessica Gonzalez

(Page 1 of 1)



## CIVIL CASE INFORMATION SHEET

2012CI06585 -P00002

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____    COURT *(FOR CLERK USE ONLY):* _____

STYLED _Jessica Gonzalez v. Merscorp, Inc.; Federal Home Loan Mortgage Corp;_
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)* _and Bank of America_

2012-CI-06585
407TH JUDICIAL DISTRICT COURT
JESSICA GONZALEZ VS MERSCORP INC ET AL

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment motion for modification or enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. This sheet, and the information it contains, does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

DATE FILED: 04/19/2012

| 1. Contact Information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name: _Justin Barringer_ | Plaintiff(s)/Petitioner(s): | ☒ Attorney for Plaintiff/Petitioner |
| Email: _jpbarringer@hotmail.com_ | _Jessica Gonzalez_ | ☐ Pro Se Plaintiff/Petitioner |
| | | ☐ Title IV-D Agency |
| | | ☐ Other: |
| Address: _7857 Fox Hom Dr._ | | |
| Telephone: _214-417-9484_ | | Additional Parties in Child Support Case: |
| City/State/Zip: _Irving, TX 75063_ | Defendant(s)/Respondent(s): | Custodial Parent: |
| Fax: | _Merscorp, Inc._ | |
| | _Federal Home Loan Mortgage Corp_ | Non-Custodial Parent: |
| Signature: _Barringer_ | _Bank of America_ | |
| State Bar No: _24069344_ | *[Attach additional page as necessary to list all parties]* | Presumed Father: |

### 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

**Civil**

**Contract**

*Debt/Contract*
- ☐ Consumer/DTPA
- ☐ Debt/Contract
- ☐ Fraud/Misrepresentation
- ☐ Other Debt/Contract:

*Foreclosure*
- ☐ Home Equity—Expedited
- ☒ Other Foreclosure
- ☐ Franchise
- ☐ Insurance
- ☐ Landlord/Tenant
- ☐ Non-Competition
- ☐ Partnership
- ☐ Other Contract:

**Injury or Damage**
- ☐ Assault/Battery
- ☐ Construction
- ☐ Defamation
*Malpractice*
- ☐ Accounting
- ☐ Legal
- ☐ Medical
- ☐ Other Professional Liability:
- ☐ Motor Vehicle Accident
- ☐ Premises
*Product Liability*
- ☐ Asbestos/Silica
- ☐ Other Product Liability List Product:
- ☐ Other Injury or Damage:

**Real Property**
- ☐ Eminent Domain/Condemnation
- ☐ Partition
- ☐ Quiet Title
- ☐ Trespass to Try Title
- ☐ Other Property:

**Related to Criminal Matters**
- ☐ Expunction
- ☐ Judgment Nisi
- ☐ Non-Disclosure
- ☐ Seizure/Forfeiture
- ☐ Writ of Habeas Corpus—Pre-Indictment
- ☐ Other:

**Family Law**

**Marriage Relationship**
- ☐ Annulment
- ☐ Declare Marriage Void
*Divorce*
- ☐ With Children
- ☐ No Children

**Other Family Law**
- ☐ Enforce Foreign Judgment
- ☐ Habeas Corpus
- ☐ Name Change
- ☐ Protective Order
- ☐ Removal of Disabilities of Minority
- ☐ Other:

**Post-Judgment Actions (non-Title IV-D)**
- ☐ Enforcement
- ☐ Modification—Custody
- ☐ Modification—Other

**Title IV-D**
- ☐ Enforcement/Modification
- ☐ Paternity
- ☐ Reciprocals (UIFSA)
- ☐ Support Order

**Parent-Child Relationship**
- ☐ Adoption/Adoption with Termination
- ☐ Child Protection
- ☐ Child Support
- ☐ Custody or Visitation
- ☐ Gestational Parenting
- ☐ Grandparent Access
- ☐ Parentage/Paternity
- ☐ Termination of Parental Rights
- ☐ Other Parent-Child:

**Employment**
- ☐ Discrimination
- ☐ Retaliation
- ☐ Termination
- ☐ Workers' Compensation
- ☐ Other Employment:

**Other Civil**
- ☐ Administrative Appeal
- ☐ Antitrust/Unfair Competition
- ☐ Code Violations
- ☐ Foreign Judgment
- ☐ Intellectual Property
- ☐ Lawyer Discipline
- ☐ Perpetuate Testimony
- ☐ Securities/Stock
- ☐ Tortious Interference
- ☐ Other:

**Tax**
- ☐ Tax Appraisal
- ☐ Tax Delinquency
- ☐ Other Tax

**Probate & Mental Health**

*Probate/Wills/Intestate Administration*
- ☐ Dependent Administration
- ☐ Independent Administration
- ☐ Other Estate Proceedings
- ☐ Guardianship—Adult
- ☐ Guardianship—Minor
- ☐ Mental Health
- ☐ Other:

### 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:
- ☐ Appeal from Municipal or Justice Court
- ☐ Arbitration-related
- ☐ Attachment
- ☐ Bill of Review
- ☐ Certiorari
- ☐ Class Action
- ☐ Declaratory Judgment
- ☐ Garnishment
- ☐ Interpleader
- ☐ License
- ☐ Mandamus
- ☐ Post-Judgment
- ☐ Prejudgment Remedy
- ☐ Protective Order
- ☐ Receiver
- ☐ Sequestration
- ☒ Temporary Restraining Order/Injunction
- ☐ Turnover

FILED
APR 19 PM 1:31
DISTRICT CLERK
BEXAR CO. TEXAS
DEPUTY